IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA,**

**v.**                                                    **CRIMINAL ACTION NO. 2:25-cr-5**

**TAYLOR BULLARD,**

      **Defendant.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Taylor Bullard's ("Defendant") Motion to Dismiss the Indictment. ECF No. 23. ("Def.'s Mot."). The Government opposes the motion. ECF No. 27. ("Resp. Opp'n"). Defendant replied. ECF No. 28. ("Reply"). This matter is now ripe for judicial determination. For the reasons stated herein, Defendant's motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On January 16, 2025, Defendant was named in a One Count Indictment. ECF No. 9. Count One charges Defendant with Threatening Interstate Communications, in violation of 18 U.S.C. § 875(c). *Id.* at 1. According to the information in the Indictment, around December 12, 2024, Defendant allegedly "transmitted in interstate or foreign commerce a communication containing a threat to injure the person of another, namely owners, operators, and employees of Company A." *Id.* Defendant resides in Texas, and Company A, its owners, operators, and employees are in the Eastern District of Virginia. *Id.*

According to an affidavit in support of the criminal complaint, Defendant received an email from Company A requesting he create a payment plan to resolve a $543 debt he had with Company A. Affidavit in Support at 2–3, ECF No. 2 ("Aff. Supp."). In response, Defendant allegedly sent the following:

1

> This debt is not valid. I paid capital one several times for this same account.
>
> Call me before I show up to one of their locations with a machete and gasoline.
>
> You have ruined my ability to buy a home. I'm 34 with a $100k+ job and it's time I target the people and companies that have ruined my ability to live the life I deserve. I will be coming after your executive team personally.
>
> Please call me before I do things that are unforgivable and will make your executive team question their life choices.
>
> Thank you,
> [Defendant]

*Id.* at 3.

On December 19, 2024, the Government filed a criminal complaint. ECF No. 1. On January 16, 2025, a grand jury returned the One Count Indictment. ECF No. 9. On February 21, 2025, Defendant filed the instant Motion. ECF No. 23. The Government responded on March 14, 2025. On March 20, 2025, Defendant replied. ECF No. 28. A jury trial is set for April 1, 2025. ECF No. 17.

## II. LEGAL STANDARD

### A. Sufficiency of a Criminal Indictment

*United States v. Perry* comprehensively outlines the standard for an indictment facing a challenge by a criminal defendant prior to the verdict. 757 F.3d 166, 171 (4th Cir. 2014). The indictment at issue must contain every essential element of the offenses charged, fairly inform a defendant of the charges, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offenses. *Id. citing United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009). While it is generally sufficient that an indictment set forth the offenses in the words of the statutes themselves, a general description of the offenses charged using statutory language must be accompanied by a statement of facts so as to inform the defendant of the specific allegations

covered by the statutory language. *Perry*, 757 F.3d at 171 *citing Hamling v. United States*, 418 U.S. 87, 117–18 (1974). Thus, an indictment must contain (1) the elements necessary to constitute the offenses charged; and (2) a statement of the essential facts constituting the offenses charged. *Perry*, 757 F.3d at 171 *citing United States v. Quinn*, 359 F.3d 666, 673 (4th Cir. 2004).

A court's consideration of motions challenging the sufficiency of an indictment is limited to the allegations contained in that indictment. *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). Courts lack the authority to review the sufficiency of evidence supporting an indictment and may not dismiss on a determination of facts that should have been developed at trial. *Id.* quoting *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010); *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003). Without the absence of the elements of the offenses charged or a statement of the essential facts, a defendant is required to demonstrate the allegations within an indictment do not establish violations of the relevant statutes. *Engle*, 676 F.3d at 415.

### A. Elements of the Threatening Interstate Communications Count (18 U.S.C. 875(c))

To make proper charges on the Threatening Interstate Communications count, the Indictment must allege the following elements and accompanying essential facts:

(1) the defendant knowingly communicates a statement in interstate commerce that
(2) contains a "true threat" that is not protected by the First Amendment; and
(3) that the defendant subjectively intended the communication as a threat.

Title 18, United States Code, Section 875(c); *United States v. White*, 810 F.3d 212, 219 (4th Cir. 2016); *United States v. Davis*, 801 F. App'x 80, 86 (4th Cir. 2020).

### III. DISCUSSION

Defendant is charged with Threatening Interstate Communications, in violation of 18 U.S.C. § 875(c). Section 875(c) provides, in relevant part: "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years,

3

or both." The First Amendment of the United States Constitution provides "Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. I. True threats of violence lie outside the bounds of the First Amendment's protection. *Counterman v. Colorado*, 600 U.S. 66, 72 (2023).

Defendant argues that his alleged communication is not a "true threat" under 18 U.S.C. § 875(c). Def.'s Mot. at 2. Defendant contends that since his alleged statement is not a true threat, the Government cannot prohibit or proscribe it. *Id.* at 3. He argues that his alleged statements do not, as a matter of law, objectively convey a serious intent to commit violence. *Id.* at 6. Defendant raises four reasons to support this argument: (1) two of Defendant's three statements are "vague and indeterminate with respect to the nature of any forecasted acts," (2) the second and third statements cannot be read in conjunction with the first, (3) the statements were expressly conditioned on an event that was unlikely to happen, and (4) the email containing the statements "had a mixed tone." *Id.* at 6–8.

The Government begins its analysis with a lengthy discussion of violent acts preceding this matter. *See* Resp. Opp'n at 4–7. The Government contends that there is "sufficient evidence" that Defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. *Id.* at 8. The government argues that a reasonable jury could find the same. *Id.* at 9. The Government further argues that the recipient is irrelevant because § 875(c) does not require proof that the recipient was the intended target. *Id.* at 10. The Government submits that Defendant did not make his statements innocently. *Id.*

### A. The Implications of the Supreme Court's Holding in *Counterman v. Colorado*

At the outset, the Court will briefly address the Supreme Court's recent decision in *Counterman v. Colorado*, 600 U.S. 66 (2023). There, the Supreme Court held that "[w]hether the

speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat." *Id.* at 74. Communication can be a true threat "based solely on its objective content." *Id.* at 72. But the Court concluded that "the First Amendment may still demand a subjective mental-state requirement shielding some true threats from liability." *Id.* at 75.

Here, the Court only decides whether Defendant's speech constitutes a true threat. The Court is not deciding whether Defendant was aware of or intended to convey the allegedly threatening aspects of his message. But at trial, the Government must prove that Defendant "had some subjective understanding of the threatening nature of his statements." *Id.* at 69.

### B. Defendant's Alleged Statements

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has held that a defendant violates § 875(c) if (1) the defendant knowingly communicates a statement in interstate commerce that (2) contains a "true threat that is not protected by the First Amendment." *United States v. Vandevere*, 849 F. App'x 69, 70 (4th Cir. 2021) (citing *United States v. White*, 810 F.3d 212, 219 (4th Cir. 2016)). A "true threat ... is one that a reasonable recipient who is familiar with the circumstances would interpret as a serious expression of an intent to do harm." *United States v. White*, 810 F.3d at 219 (internal quotation marks omitted).

#### i. The Contents and Conditionality of Defendant's Alleged Statements

The Supreme Court has set out factors for courts to consider when determining whether a statement is a true threat. A communication is not a true threat if it is "(1) made in jest; (2) to a public audience; (3) in political opposition to the President; and (4) conditioned upon an event the

speaker himself vowed would never occur." *Vandevere*, 849 F. App'x at 70 (citing *Watts v. United States*, 394 U.S. 705, 707–08).[1]

Applying these factors to this case, the Court concludes that Defendant's statement contained a true threat because a reasonable recipient familiar with the context would have felt threatened by the message. First, the recipient would not have construed this message as a joke. Defendant was voicing his frustration with a debt he viewed as invalid and said that if the recipient did not call him, he would "show up to one of their locations with a machete and gasoline." Aff. Supp. at 3. Second, unlike the statement in *Watts*, Defendant did not make his statement at a rally. Defendant allegedly sent the email privately, albeit to the company's email. *See* Aff. Supp. at 3. Third, there is no evidence that Defendant "intended to engage in political discourse with" the recipient. *Bly*, 510 F.3d at 459. In the context in which it was received, a reasonable recipient would conclude that Defendant had a serious intent to do harm.

Finally, the fact that Defendant's statements were conditional does not help here. Indeed, "[m]ost threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats. They are threats nonetheless." *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (internal citation omitted). Defendant argues that his statements described possibilities that were expressly conditioned on something that was not likely to occur. Def.'s Mot. at 7. Courts analyze "the expressly conditional nature of the statement" and "the reaction of the listeners" in determining whether a true threat exists. *Lockhart*, 382 F.3d at 452 (quoting *Watts*, 394 U.S. at 708). Although Defendant's statement "was grammatically conditional, it was not expressly so." *Bly*, 510 F.3d at

---

[1] *Watts* dealt with threats against the President of the United States. But the Fourth Circuit has continued to use these same factors when the communications do not involve the President. *See United States v. Bly*, 510 F.3d 453; *see also United States v. Napa*, 370 F. App'x 402 (4th Cir. 2010).

6

459. Unlike the speaker in *Watts*, Defendant's statement was not "expressly made conditional upon an event... which [he] vowed would never occur." 394 U.S. at 707.

Courts view a communication to determine whether it contains a true threat in the context in which it is received. *See United States v. Spruill*, 118 F.3d 221, 228 (4th Cir. 1997) (when considering whether a statement is a threat, "[c]ontext is important"). Defendant asks the Court to read Defendant's alleged statements in the context in which he sent the message yet also posits that the second and third allegedly threatening statements cannot be read alongside the first. Def.'s Mot. at 4, 7. As discussed in detail below, the recipient of the threat has no bearing on the conclusion here. Separating the statements by recipient, as Defendant urges, would read out much of the context the Court must consider.

Read in the context in which it was received, a reasonable recipient could, and likely would, interpret this message to be a threat. Indeed, "[t]he reader is left unsure what measure of justice would appease [Defendant]." *Bly*, 510 F.3d at 459. Defendant begins by stating that the "debt is not valid" because he "paid [C]apital [O]ne several times for this same account." Aff. Supp. at 3. Defendant proceeds to tell the recipient to "[c]all [him] before [he] show[s] up to one of their locations with a machete and gasoline." *Id.* Defendant then states that the company has ruined his ability to buy a home and that "it's time [he] target[s] the people and companies that have ruined [his] ability to live the life [he] deserves." *Id.* It is unclear whether simply calling Defendant, resolving the debt issue, or neither, would appease him. Further, that Defendant stated he "*will* be coming after" the executive team cuts against any conditional language in the message. *Id.* (emphasis added).

The Court also rejects the argument that Defendant's statements are vague and indeterminate. Even if they were vague and indeterminant, "[t]he use of ambiguous language does

not preclude a statement from being a threat." *United States v. Fulmer*, 108 F.3d 1486, 1492 (1st Cir. 1997) (internal citation omitted); *see United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994) ("An absence of explicitly threatening language" is nonetheless a threat.).

The "reaction of the listeners" also suggests that this communication contained a true threat. Indeed, once Defendant allegedly sent the message, Google provided subscriber and other information regarding the email address from which the message was sent in response to an emergency request. Aff. Supp. at 3. The recipient here likely interpreted this communication as a threat because they submitted an emergency request to Google. Thus, the Court concludes the email contains a true threat that is not protected by the First Amendment.

### ii. Defendant's Tone

Defendant argues that his email's "mixed tone" undermines its potentially threatening nature. Def.'s Mot. at 8. He argues that a person expressing thanks cannot also express serious intent to do harm. *Id.* This argument does not persuade the Court. The existence of a threat depends "on 'what the statement conveys' to the person on the other end" of the message. *Counterman*, 600 U.S. at 74. Saying "thank you" does nothing to reduce "fear of violence" or the "disruption that fear engenders." *Virginia v. Black*, 538 U.S. at 360. Defendant's email does not have the "mixed tone" he suggests. Accordingly, Defendant's statement contains a true threat.

### iii. Recipient of the Message

Finally, in his reply, Defendant argues that "[i]t matters who received the message." Reply at 4. Defendant urges the Court to consider "who [the statement] supposedly threatened and to whom it was sent." *Id.* Defendant argues that at one end of the spectrum, the degree of separation between a threatened individual and their close relatives is small. *Id.* Defendant argues that this type of threat is likely to reach the intended target. *Id.* at 4–5. He argues that, at the other end of

the spectrum, a threatening message directed at a public figure will not likely reach the threatened individual. *Id.* at 5. Defendant argues that this is relevant: he argues that because he did not contact anyone at Capital One, or any member of the debt collection company's executive team, the mismatch between the alleged threats and their recipients weighs in favor of the messages not being true threats. *Id.*

But this is not so. The Fourth Circuit's precedent forecloses this argument. *Lockhart* is just one example. There, the defendant handed a Food Lion supervisor a letter stating, "if George Bush refuses to see the truth and uphold the Constitution, I will personally put a bullet in his head." *Lockhart*, 382 F.3d at 450. The court concluded that her statement was a true threat. *Id.* at 452. The Fourth Circuit's decision in *Lockhart* suggests that the relative closeness of the recipient and intended target does not impact whether the message contains a true threat.

Further, the Fourth Circuit stated in *White* that "neither direct communication nor personal or group involvement in the threat is an essential component to finding a true threat." *United States v. White*, 670 F.3d 498, 513 (4th Cir. 2012). Thus, the Court concludes that Defendant's message is not protected by the First Amendment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment is **DENIED**. ECF No. 23.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
April 2, 2025

/s/
Raymond A. Jackson
United States District Judge